UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KENNETH E. SIMON, | ) | |
| | ) | |
| Plaintiff, | ) | 17 C 3229 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| EFIE'S CANTEEN, d/b/a CHICAGO CUBS BAR & GRILL, DEMITRA ZERVAS, GEORGE ZERVAS, EFIE SPYROPOULOS, PETER SPYROPOULOS, and YOUNES ABUIRMEILEH, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION AND ORDER

Kenneth Simon, a Jewish man, brought this suit *pro se* against Efie's Canteen, d/b/a Chicago Cubs Bar & Grill, alleging that it unlawfully terminated his employment as a waiter because of his religion in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. Doc. 1. After some procedural hiccups, Simon filed an amended complaint, adding as defendants Younes Abuirmeileh, the restaurant's general manager; Demitra Zervas and Efie Spyropoulos, its co-owners; and George Zervas and Peter Spyropoulos, their husbands. Doc. 30. Simon then amended his complaint a second time, Doc. 34, and a third, Doc. 36. The third amended complaint alleges wrongful termination and a hostile work environment on the basis of religion, race, and national origin under Title VII and 42 U.S.C. § 1981. *Ibid*.

Defendants now move under Civil Rules 12(b)(6) and 12(f) to strike Simon's first, second, and third amended complaints and/or to dismiss all of his claims except his original Title VII claim against Efie's. Doc. 42. Given Simon's *pro se* status when he filed his amended complaints—counsel appeared on his behalf after Defendants' motion was fully briefed, Doc. 57—the absence of material new factual allegations, and the early stage of this litigation,

1

Defendants' motion to strike is denied and the third amended complaint will be deemed the operative complaint. *See Kaba v. Stepp*, 458 F.3d 678, 687 (7th Cir. 2006) ("It is, by now, axiomatic that district courts have a special responsibility to construe *pro se* complaints liberally and to allow ample opportunity for amending the complaint when it appears that by so doing the *pro se* litigant would be able to state a meritorious claim.") (internal quotation marks omitted); *Marshall v. Knight*, 445 F.3d 965, 970 (7th Cir. 2006) (holding that the *pro se* plaintiff "should … have been allowed to add a retaliation claim based on his allegations about the adverse treatment he encountered after filing his original civil rights complaint"). That said, because the complaint alleges that Defendants discriminated against Simon because he is Jewish, it presents only a religious discrimination claim under Title VII and a race discrimination claim under § 1981; as Simon's newly retained counsel acknowledged at a recent hearing, Doc. 61, he does not have a viable national origin claim under either statute. *See Shott v. Katz*, 829 F.3d 494, 497 (7th Cir. 2016) ("Jews are among the 'identifiable classes of persons' [§ 1981] protects.") (quoting *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 603, 613 (1987)); *Lapine v. Edward Marshall Boehm, Inc.*, 1990 WL 43572, at *5 (N.D. Ill. Mar. 28, 1990) ("[S]tating that one is Jewish gives no indication of that individual's country of origin. … Jews, like Catholics and Protestants, hail from a variety of different countries.").

With these parameters set, and for the reasons stated below, Defendants' motion to dismiss is granted in part and denied in part.

## Background

In resolving a Rule 12(b)(6) motion, the court assumes the truth of the operative complaint's well-pleaded factual allegations, though not its legal conclusions. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). The court must also consider

"documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Simon's brief opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019-20 (7th Cir. 2013). The facts are set forth as favorably to Simon as those materials allow. *See Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016). In setting forth those facts at the pleading stage, the court does not vouch for their accuracy. *See Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 384 (7th Cir. 2010).

Simon is Jewish. Doc. 36 at p. 16, ¶¶ 66-67. In Summer 2014, he began working part-time as a waiter at Efie's restaurant, which is located in O'Hare International Airport. *Id*. at p. 6, ¶ 5. He transitioned months later to a full-time position. *Id*. at p. 8, ¶ 15. After two brief hiatuses—one to pursue another job, and the other health-related—Simon returned to full-time work at the restaurant in August 2015. *Id*. at pp. 9-10, ¶¶ 21-24. Over the next three months, Simon observed that Abuirmeileh, the general manager, "ignore[d] and avoid[ed him] at all cost[s]." *Id*. at p. 10, ¶ 28. Making his morning rounds, Abuirmeileh would pointedly fail to greet Simon. *Id*. at p. 10, ¶ 29. At other times, Abuirmeileh would deliberately walk in the opposite direction so as not to interact with Simon. *Id*. at p. 11, ¶ 30. Abuirmeileh would regularly purchase coffee for other coworkers, but never for Simon. *Id*. at p. 11, ¶ 32.

In November 2015, Simon's airport badge—a prerequisite for working at the restaurant—was up for renewal. *Id*. at pp. 11-12, ¶¶ 40-43. "Doreen," a manager at the restaurant, initially told Simon that he would have to wait several weeks to complete the relevant paperwork. *Id*. at p. 12, ¶ 42. Then, on November 24, Doreen told Simon that he would have to speak with George Zervas about the badge renewal. *Id*. at p. 12, ¶ 45. Doreen also began to scrutinize the orders

3

Simon entered into the restaurant's computer system. *Id*. at pp. 12-13, ¶ 46. Later that day, Simon spoke to Zervas, who said he would have to speak to Abuirmeileh about the badge issue. *Id*. at p. 13, ¶¶ 48-52.

When Simon reached Abuirmeileh by phone and asked for help in renewing the badge, Abuirmeileh responded, "hell no." *Id*. at p. 14, ¶ 53. After Abuirmeileh stated that he would not allow Simon to renew his badge, Simon asked if Abuirmeileh was firing him, and Abuirmeileh replied that Simon had a "bad attitude." *Id*. at p. 14, ¶¶ 54-55. Abuirmeileh provided no explanation for his decision to fire Simon, and said that he would not provide a termination letter for unemployment compensation purposes. *Id*. at p. 14, ¶¶ 56-58. Abuirmeileh ended the call by stating that he "[didn't] need a Jew working for [him]." *Id*. at p. 14, ¶ 59. Throughout the course of his employment at the restaurant, Simon had been an exemplary employee, with high sales and no record of discipline. *Id*. at p. 11, ¶¶ 35-39.

## Discussion

### I. Title VII Claims Against the Individual Defendants

As Simon's counsel acknowledged at the hearing, Simon's Title VII claims against the individual defendants must be dismissed because the complaint alleges that only Efie's employed him. *Id*. at pp. 8-9, ¶¶ 15, 22. Title VII makes it an "unlawful employment practice for an *employer* … to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1) (emphasis added). The statute thus "authorizes suit *only* against [the plaintiff's] employer. Individual people who are agents of the employer cannot be sued as employers under Title VII." *Passananti v. Cook Cnty.*, 689 F.3d 655, 662 n.4 (7th Cir. 2012); *see also Robinson v.*

4

*Sappington*, 351 F.3d 317, 332 n.9 (7th Cir. 2003) ("It is only the employee's employer who may be held liable under Title VII."); *Levitin v. Nw. Cmty. Hosp.*, 64 F. Supp. 3d 1107, 1123 (N.D. Ill. 2014) ("If Levitin was not employed by NCH, her Title VII claim fails."). It follows that Simon's Title VII claims against the individual defendants must be dismissed. *See Williams v. Banning*, 72 F.3d 552, 555 (7th Cir. 1995) ("Because a supervisor does not, in his individual capacity, fall within Title VII's definition of employer, Williams can state no set of facts which would enable her to recover under the statute."). And because the flaw in those claims could not be cured by repleading, the dismissal is with prejudice. *See Gonzalez-Koeneke v. West*, 791 F.3d 801, 807 (7th Cir. 2015) ("District courts … have broad discretion to deny leave to amend … where the amendment would be futile.") (internal quotation marks omitted); *Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013) (same).

## II.     Section 1981 Wrongful Termination Claim

Although "[t]he same requirements for proving discrimination apply to claims under Title VII [and] § 1981," *Egonmwan v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 845, 850 n. 7 (7th Cir. 2010); *see also Morgan v. SVT, LLC*, 724 F.3d 990, 995 (7th Cir. 2013) (same), § 1981 "provides for individual liability," *Zayadeen v. Abbott Molecular, Inc.*, 2013 WL 361726, at *5 (N.D. Ill. Jan. 30, 2013) (citing cases). To state a § 1981 claim against the individual defendants, Simon must allege that they "instituted a (specified) adverse employment action against [him]" on the basis of his being Jewish. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir. 2014) (internal quotation marks omitted); *see also Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1028 (7th Cir. 2013) (same); *FirstMerit Bank, N.A. v. Ferrari*, 71 F. Supp. 3d 751, 755 (N.D. Ill. 2014) (same). Having alleged that Abuirmeileh fired Simon because he did not want "a Jew working for [him]," Doc. 36 at p. 14, ¶ 59, the complaint states a plausible § 1981 wrongful

5

termination claim against Abuirmeileh. *See Samovsky v. Nordstrom, Inc.*, 619 F. App'x 547, 548 (7th Cir. 2015) ("'I was turned down for a job because of my race' is all a complaint has to say.") (quoting *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008)); *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404-05 (7th Cir. 2010) ("A plaintiff who believes that she has been passed over for a promotion because of her sex will be able to plead that she was employed by Company X, that a promotion was offered, that she applied and was qualified for it, and that the job went to someone else. That is an entirely plausible scenario, whether or not it describes what 'really' went on in this plaintiff's case."). And because Simon alleges that Abuirmeileh was acting on the restaurant's behalf, the complaint states a plausible § 1981 wrongful termination claim against Efie's as well.

By contrast, the complaint does not allege that any of the other individual defendants took any adverse action against Simon—let alone that they discriminated against him because he is Jewish. In fact, the complaint alleges that Simon rarely (if ever) saw Demitra Zervas or Efie Spyropoulos at work, Doc. 36 at p. 7, ¶ 9, and that Simon, George Zervas, and Peter Spyropoulos had previously participated in several other business ventures together, *id.* at p. 9, ¶ 20. Although the complaint alleges that George Zervas told Simon to call Abuirmeileh about the airport badge renewal, *id.* at p. 13, ¶¶ 48-52, it does not allege that Zervas discriminated against Simon in doing so, nor, given that Abuirmeileh was the general manager and that Zervas does not appear to have an ownership interest in Efie's, Doc. 17, would it be plausible to infer that he did. Accordingly, Simon's § 1981 wrongful termination claims against Demitra and George Zervas and Efie and Peter Spyropoulos are dismissed. The dismissal is without prejudice. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519 (7th Cir. 2015) (noting that "a plaintiff whose original complaint has been dismissed under Rule 12(b)(6)

should be given at least one opportunity to try to amend her complaint before the entire action is dismissed").

### III. Title VII and Section 1981 Hostile Work Environment Claims

Title VII's prohibition on discrimination "with respect to [an individual's] compensation, terms, conditions, or privileges of employment," 42 U.S.C. § 2000e-2(a)(1), "encompasses the creation of a hostile work environment that is severe or pervasive enough to affect the terms and conditions of employment," *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 561 (7th Cir. 2016) (internal quotation marks omitted); *see also Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 982 (7th Cir. 2014) ("Title VII is violated when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.") (internal quotation marks omitted). Hostile work environment claims under § 1981 are analyzed under the same framework. *See Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 544 (7th Cir. 2011); *Hallmon v. Sch. Dist. 89*, 911 F. Supp. 2d 690, 703-04 (N.D. Ill. 2012). For Simon's hostile work environment claim to survive dismissal, he must allege: "(i) that [his] work environment was objectively and subjectively offensive; (ii) that the harassment was based on [his] race; (iii) that the harassment was pervasive or severe; and (iv) that a legal basis exists for holding [Defendants] liable." *Cable v. FCA US LLC*, 679 F. App'x 473, 476 (7th Cir. 2017); *see also Cole v. Bd. of Trs. of N. Ill. Univ.*, 838 F.3d 888, 895-96 & n.6 (7th Cir. 2016) (same).

The conduct alleged in the complaint "fall[s] short of the kind of conduct that might support a hostile work environment claim." *Vance v. Ball State Univ.*, 646 F.3d 461, 470 (7th Cir. 2011). The complaint alleges that Abuirmeileh went out of his way not to interact with Simon and treated other waiters at the restaurant more favorably. That may have been immature

7

and unprofessional, *see ibid.*, but it is not sufficiently offensive to have created a hostile work environment for Title VII purposes. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) ("Title VII [should] not become a general civility code.") (internal quotation marks omitted); *Boss v. Castro*, 816 F.3d 910, 921 (7th Cir. 2016) (holding that the defendant was entitled to summary judgment where the record provided no evidence of "comments meant to intimidate [the plaintiff], threaten him, or which would be so severe or persuasive as to alter his work environment" or of a "workplace permeated with discriminatory ridicule, intimidation, and insult"); *Vance*, 646 F.3d at 470 (same, where the plaintiff alleged that the defendant "'mean-mugged' her and stared at her when they were in the kitchen together"); *Patton v. Indianapolis Pub. Sch. Bd.*, 276 F.3d 334, 339 (7th Cir. 2002) (same, where the plaintiff's supervisor "treated her in a rude, abrupt, and arrogant manner, ignored her work-related suggestions and failed to keep her informed about changes at work"); *Johnson v. Cnty. of Cook*, 2012 WL 2905485, at *7 (N.D. Ill. July 16, 2012) (same, where "[t]he evidence at most show[ed] that" one of the plaintiffs "had several arguments with" one of the defendants). Simon's other allegations, including that, the day he was terminated, Doreen gave extra scrutiny to the orders he entered into the restaurant's computer system, Doc. 36 at pp. 12-13, ¶ 46, are likewise insufficient to support a hostile work environment claim. The hostile work environment claims accordingly are dismissed, but the dismissal is without prejudice. *See Runnion*, 786 F.3d at 519.

## Conclusion

Defendants' motion to dismiss is granted in part and denied and part. The Title VII claims against the individual defendants are dismissed with prejudice. The § 1981 claims against the individual defendants other than Abuirmeileh and the Title VII and § 1981 hostile work environment claims are dismissed without prejudice; Simon has until June 12, 2018 to replead

8

those claims. Simon may proceed on his Title VII religious discrimination claim against Efie's and his § 1981 race discrimination claim against Efie's and Abuirmeileh based only on his allegedly wrongful termination.

May 22, 2018

United States District Judge